**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kevin White,<br><br>    Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>    Defendant. | No. CV-22-00093-PHX-SMB<br><br>**ORDER** |

At issue is the denial of Plaintiff Kevin White's Application for Social Security Disability Insurance ("SSDI") benefits by the Social Security Administration ("SSA") under the Social Security Act. Plaintiff filed a Complaint (Doc. 1), and an Opening Brief (Doc. 14), seeking judicial review of that denial. Defendant SSA Commissioner ("Commissioner") filed an Answering Brief (Doc. 12), to which Plaintiff replied (Doc. 18). The Court has reviewed the parties' briefs, the Administrative Record (Doc. 13), and the Administrative Law Judge's ("ALJ") decision (Doc. 13-3 at 14–25), and will affirm the ALJ's decision for the reasons addressed herein.

**I.  BACKGROUND**

Plaintiff filed an Application for SSDI benefits in November 2019, alleging a disability beginning in June 2018. (*Id.* at 14.) Plaintiff's claim was initially denied in March 2020. (*Id.*) A hearing was held before ALJ Carla L. Waters on January 11, 2021. (*Id.*) After considering the medical evidence and opinions, the ALJ determined that Plaintiff suffered from severe impairments including status post cervical astrocytoma with

resection, myelomalacia in the cervical spine, degenerative disc disease (DDD), hypogonadism, chronic pain disorder, and major depressive disorder. (*Id.* at 17.) However, the ALJ concluded that despite these impairments, Plaintiff had the residual functional capacity ("RFC") to perform light work with the following limitations: (1) Plaintiff can lift and carry 20 pounds occasionally and 10 pounds frequently; (2) stand and walk around 6 hours and sit about 6 hours within an 8-hour workday consistent of normal breaks; (3) occasionally climb or crawl; (4) frequently balance, kneel, crouch, and reach; (5) perform simple routine work such as work related decisions and instructions. (*Id.* at 18–19.) Consequently, Plaintiff's Application was again denied by the ALJ on February 18, 2021. (*Id.* at 25.) Thereafter, the Appeals Council denied Plaintiff's Request for Review of the ALJ's decision—making it the final decision of the SSA Commissioner (the "Commissioner")—and this appeal followed. (Doc. 14 at 3.)

## II. LEGAL STANDARDS

An ALJ's factual findings "shall be conclusive if supported by substantial evidence." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153 (2019). The Court may set aside the Commissioner's disability determination only if it is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001).

## III. DISCUSSION

Plaintiff argues that the ALJ committed harmful error in weighing the medical opinion evidence of Dr. Andrew Burrell and Physical Therapist ("PT") Sandford Goldstein, and statements made by Emergency Medical Technician ("EMT") Jordan Pokraka. (Doc.

14 at 3.) The Commissioner argues the ALJ's opinion is supported by substantial evidence and free of legal or harmful error. (Doc. 17 at 5.) The Court has reviewed the medical and administrative records and agrees with the Commissioner for the following reasons.

### A. Evaluation of Medical Testimony

Claims, such as Plaintiff's, that are filed on or after March 27, 2017, are subject to amended regulations for evaluating medical evidence. *See* Revisions to Rules Regarding Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5844 (Jan. 18, 2017) (codified at 20 C.F.R. pts. 404 & 416). Plaintiff filed her claim in August 2017. Applying these new regulations, the Ninth Circuit held that an ALJ "must 'articulate . . . how persuasive' it finds 'all of the medical opinions' from each doctor or other source, and 'explain how it considered the supportability and consistency factors' in reaching these findings." *See Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) (cleaned up) (citing 20 C.F.R. § 404.1520c(b)(2)).

#### 1. Dr. Burrell and PT Goldstein's Report

Plaintiff primarily argues that the ALJ committed harmful error by ignoring Dr. Burrell's opinion, even though Dr. Burrell and PT Goldstein submitted joint medical opinions, and Dr. Burrell is in a superior position. (Doc. 14 at 7.) Additionally, Plaintiff argues the ALJ committed harmful error by not considering EMT Pokraka's statements as a medical opinion and by not articulating how the statements were considered under 20 C.F.R. § 404.1520c(a). (*Id.* at 10.) The Commissioner argues the ALJ's opinion is supported by substantial evidence and any omission of Dr. Burrell's name as the reviewing physician was harmless error. (Doc. 17 at 8–9.)

Plaintiff first argues that the ALJ committed reversable error by not acknowledging that Dr. Burrell was a superior, reviewing physician on the joint report with PT Goldstein. While the ALJ may have erred in characterizing the joint report, the ALJ was not required to consider Dr. Burrell's treating or examining relationship with Plaintiff. *See* 20 C.F.R. § 404.1520c(b)(2) ("*We may, but are not required to*, explain how we considered the factors in paragraphs (c)(3) through (c)(5) of this section, as appropriate, when we

articulate how we consider medical opinions and prior administrative medical findings in your case record.") (Emphasis added). These factors include the relationship with the claimant and the medical source's familiarity with the evidence. *Id.* As such, the ALJ did not commit reversable error, as discussed further below.

Plaintiff next refutes the ALJ rejecting the joint medical statement on the sole basis that it is inconsistent with the record. Plaintiff asserts the ALJ found that the record reflected normal muscle strength and tone along with no evidence of muscle atrophy, which the ALJ concluded would be expected if Plaintiff were required to spend most days reclining or lying down. Plaintiff argues the ALJ's record cites do not address testing for muscle tone, measurement, or muscle atrophy—thus resulting in legal error. (*See* Doc. 13-8 at 37; 83; 130); *see also Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996) ("Where the purported existence of an inconsistency is squarely contradicted by the record, it may not serve as the basis for the rejection of an examining physician's conclusions."). Plaintiff is correct that two of the record cites are incorrect. However, as the Commissioner notes, the ALJ did rely on substantial evidence when making this determination but made a clerical error by misciting two record cites by one page. (*See* Docs. 17 at 8; 13-8 at 38 (noting normal gait and station); 84 (noting 5/5 motor strength, nontender lumbar spine, no deformity, normal curvature, nontender cervical spinous process, well-healed posterior scar, and full and nonpainful range of motion); 130 (citing Dr. Burrell's progress notes marking normal motor strength in upper and lower extremities)). Therefore, the Court finds the ALJ relied on substantial record evidence when rejecting the joint report and any error was clerical, not reversible.

Plaintiff further argues that this rejection was in error because the ALJ cited to Dr. Burrell's own treatment records, and thus did not establish contradicting record evidence to reject the joint report. The Court disagrees. As the Commission notes, the ALJ also relied on record evidence from appointment provider Naomi Alcock, PA, supervising provider Arthur Hatch, DO, and progress notes by Jonathan Henriquez when making her determination. (*See* Docs. 17 at 9; 13-8 at 37–38, 83–84.) Therefore, the ALJ relied on

substantial evidence and the relevant regulations when rejecting the joint report. *See* 20 C.F.R. § 404.1520c(c)(2).

Lastly, Plaintiff argues that the ALJ's relied on medical records that predate his disability by months. (Doc. 14 at 9.) The Commissioner counters that Plaintiff amended his application to reflect a disability onset day of June 4, 2018. (Doc. 13-6 at 7.) As such, the ALJ's reliance on (Doc. 13-8 at 83–84) which is dated August 20, 2018, and (*id.* at 37–38) dated November 6, 2018, is within the relevant timeframe.

2. EMT Pokraka

EMT Pokraka submitted a statement detailing observations he made while working with Plaintiff for approximately five months. (Doc. 13-7 at 122–23.) Plaintiff argues EMT Pokraka's testimony is medical opinion evidence because he is an EMT and was required to be analyzed as such under the guiding regulations. (Doc. 14 at 10.) This is simply not true. EMT Pokraka's testimony is lay witness testimony that details his personal observations while working with Plaintiff. EMT Pokraka never treated Plaintiff in a medical capacity—he merely witnessed Plaintiff's behavior and remarks on the job. Therefore, under 20 C.F.R. § 404.1520c(d), an ALJ "is not required to articulate how [she] considered evidence from nonmedical sources using the requirements in paragraphs (a)-(c) in this section." To this point, the Commissioner cites to multiple cases in this Circuit that suggests the new regulations do not require an ALJ to state germane reasons for disagreeing with a lay witness.[1] (Doc. 17 at 11.)

Regardless, the ALJ did provide germane reasons for rejecting the lay testimony. EMT Pokraka stated Plaintiff would often need to lie down in the back of the ambulance during their 12-hour shift, complain of neck pain and leg numbness on the job, called out sick for needing to increase his pain medication, and ultimately became unable to work due to worsening pain and fatigue. (Doc. 13-7 at 122–23.) However, the ALJ found EMT

---

[1] *See, e.g.*, *Caleb H. v. Saul*, No. 4:20-CV-5006-EFS, 2020 WL 7680556, at *8 n.84 (E.D. Wash. Nov. 18, 2020); *Wendy J. C. v. Saul*, No. 3:19-cv-01434-AC, 2020 WL 161402, at *12 n.9 (D. Or. Oct. 21, 2020); *Kyra H. v. Comm'r Soc. Sec. Admin.*, No. 6:18-cv-01979-AC, 2020 WL 2216912, at *19 n.8 (D. Or. May 7, 2020).

Pokraka's statements did not establish Plaintiff's disability.  The ALJ found the statements inconsistent with the following objective mild findings: (1) MRI noting no disc herniation; (2) MRI noting normal and congruent c-spine; (3) MRI lumbar spine noting normal or mild findings and no significant abnormalities; (4) normal upper and lower musculoskeletal strength, gait, and station; (5) normal curvature of lumbar spine and 5/5 motor strength; and (6) diagnostic imaging report noting neck pain and fatigue, but stable mild cervical spondylosis and stable postoperative changes with no evidence of abnormal cord enhancement to suggestion residual or recurrent mass.  (Doc. 17 at 11.)

Plaintiff contests that these findings are not "mild" and argues that medical imaging cannot be used to corroborate the severity of Plaintiff's symptoms.  *See Bunnell v. Sullivan*, 947 F.2d 341, 347 (9th Cir. 1991) ("We cannot conclude that Congress intended to require objective medical evidence to fully corroborate the severity of pain while aware of the inability of medical science to provide such evidence.").  Here, this is not the case.

Although "subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).  Moreover, the Court finds the ALJ compared EMT Pokraka's statements in conjunction with the ALJ's subject complaint analysis, and that Pokraka's statements merely corroborated Plaintiff's discredited symptom testimony.  (*See* Doc. 13-3 at 20); *see also Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) (ALJ's may reject lay testimony that essentially reproduces the claimant's discredited testimony).  Likewise, the Court finds that even if the ALJ need not produce germane reasons for rejecting lay witness testimony, she still successfully did so.  *See Jenkins v. Saul*, No. 19-CV-02094-VKD, 2020 WL 5760357, at *4 (N.D. Cal. Sept. 28, 2020) ("[T]he ALJ also gives germane reasons for rejecting other lay witness testimony where it is found to be similar to claimant's." (quoting *Bennet v. Colvin*, 202 F. Supp. 3d 1119, 1130–31 (N.D. Cal. 2016)).

As the ALJ reasoned, "[w]hile the claimant has complained that his pain level

appears to be increasing, the objective findings have not changed. The claimant reported he continued to use medical marijuana and Tramadol for pain, which he felt was doing a "fair job." (Doc. 13-3 at 20); *see* 20 C.F.R. § 404.1529(c)(3(iv) (ALJ's consider the medication you take or have taken to alleviate pain and symptoms). Furthermore, the ALJ also rejected Plaintiff's testimony because the record showed he could drive the children to and from school, perform light chores, prepare simple meals, shop in stores, and independently manage finances. (Doc. 13-3 at 20); *see* 20 C.F.R. § 404.1529(c)(3)(i) (ALJ's will consider daily activities in the consistency analysis).

Lastly, Plaintiff takes issue with the ALJ characterizing the objective medical evidence as "mild" when rejecting EMT Pokraka's testimony. But because the Court finds that the ALJ relied on substantial evidence when discrediting Plaintiff and EMT Pokraka's testimony, it "may not engage in second-guessing." *Tommasetti*, 533 F.3d at 1039. For these reasons, the ALJ did not err in rejecting EMT Pokraka's testimony.

### IV.    HARMLESS ERROR

Plaintiff argues that the ALJ's errors were harmful and require this Court to reverse the ALJ's decision. The Court "will not reverse the decision of the ALJ for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti*, 533 F.3d at 1038.

Here, the ALJ erred in mischaracterizing the joint report by not stating Dr. Burrell's involvement, and by misciting two record cites by one page number. *Supra* Section III(A)(1). These errors are harmless. First, the Commissioner argues that merely including Dr. Burrell's name into the discussion of PT Goldstein's report would not change the ALJ's analysis, evaluation of the opinion, or have a substantive effect. (Doc. 17 at 9.) The Court agrees, especially because the ALJ cites to the joint report in her analysis, and the ALJ was not required to talk about Dr. Burrell's superior position or treating relationship with Plaintiff. Therefore, any omission of Dr. Burrell's name in the discussion of the report's contents was harmless and inconsequential to determining Plaintiff's disability. *See Tommasetti*, 533 F.3d at 1038. Finally, the ALJ's clerical error misciting two records cite

by one page is harmless because the ALJ's findings were still accurately reflected in the record and therefore do not impact Plaintiff's disability determination. *Id.*

### V. CONCLUSION

Therefore,

**IT IS ORDERED** affirming the February 18, 2021 decision of the ALJ, as upheld by the Appeals Council.

**IT IS FURTHER ORDERED** directing the Clerk to enter final judgment consistent with this Order and close this case.

Dated this 14th day of March, 2023.

Honorable Susan M. Brnovich
United States District Judge